**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION**

| | | |
|---|---|---|
| **JOHNNIE R. WINSTON, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE** |
| | ) | **NO. 1:16-CV-4018** |
| **KANDI BURRUSS-TUCKER AND KANDI KOATED ENTERTAINMENT, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**<u>DEFENDANTS KANDI BURRUSS-TUCKER AND KANDI KOATED ENTERTAINMENT, INC.'S MOTION FOR LEAVE TO AMEND ANSWER TO PLAINTIFFS' AMENDED COMPLAINT TO ADD COUNTERCLAIM</u>**

Defendants Kandi Burruss-Tucker ("Ms. Burruss-Tucker") and Kandi Koated Entertainment, Inc. ("Kandi Koated Entertainment") (collectively, "Defendants"), by and through their undersigned counsel, hereby move, pursuant to Federal Rules of Civil Procedure 16(b)(4), 15(a), and 13(e), for leave to file the attached Answer to Amended Complaint, Affirmative Defenses, and Counterclaims of Defendants Kandi Burruss-Tucker and Kandi Koated Entertainment. In support of this motion, Defendants file herewith a Memorandum

in Support of Defendants' Motion for Leave to Amend Answer to Plaintiff's Amended Complaint to Add Counterclaim showing this Court that the proposed counterclaim was acquired or matured and continues to mature since the Defendants filed their original Answer to Plaintiffs' Complaint and that it will not cause Plaintiff any undue prejudice, is not futile and is not offered in bad faith, with a dilatory motive, or after any failure to cure prior deficiencies.

Respectfully submitted this 6th day of April, 2016.


*/s/ Allegra J. Lawrence*
Precious Anderson (GA Bar 017783)
THE ANDERSON FIRM, LLC
1100 Spring Street, Suite 730
Atlanta, Georgia 30309
Telephone: 404.521.1111
Facsimile: 404.521.1919
panderson@theandersonfirm.com
Allegra J. Lawrence (GA Bar 439797)
Victoria C. Smith (GA Bar 836602)
LAWRENCE & BUNDY LLC
1180 West Peachtree Street N.W., Suite 1650
Atlanta, Georgia 30309
Telephone: 404.400.3350
Facsimile: 404.609.2504
allegra.lawrence-hardy@lawrencebundy.com
victoria.smith@lawrencebundy.com

*Attorneys for Defendants Kandi Burruss-Tucker and Kandi Koated Entertainment, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **JOHNNIE R. WINSTON, III,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KANDI BURRUSS-TUCKER AND KANDI KOATED ENTERTAINMENT, INC.,**<br><br>**Defendants.** | ) | **CIVIL ACTION FILE NO. 1:16-CV-4018-AT** |

**ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF DEFENDANTS KANDI BURRUSS-TUCKER AND KANDI KOATED ENTERTAINMENT, INC.**

Defendants Kandi Burruss-Tucker ("Ms. Burruss-Tucker") and Kandi Koated Entertainment, Inc. ("Kandi Koated Entertainment") (collectively, "Defendants"), by and through their undersigned counsel, hereby respond to the Amended Complaint filed by Plaintiff Johnnie R. Winston, III. In response to Plaintiff's unnumbered, introductory section entitled "Nature of Action," Defendants admit only that Plaintiff's Amended Complaint purports to bring claims pursuant to the Fair Labor Standards Act of 1938 ("FLSA"). Defendants aver that Plaintiff contractor services to Kandi Koated Entertainment during various periods between August 3, 2013 and February 29, 2016. Defendants deny all other allegations in the "Nature of Action" section.

Defendants further respond by stating that Plaintiff's claims are baseless, are in direct violation of a contractual agreement, and are geared specifically to garner attention for Plaintiff and his own company, which Plaintiff owned and operated throughout his business relationship with Kandi Koated Entertainment. To that end, Defendants also note that Plaintiff timed the filing of his claims to coincide with the production and airing of a television show. In addition to defaming Defendants, Plaintiff ignores the fact that his only relationship with Kandi Koated Entertainment was as an independent contractor.

With respect to the numbered allegations in the Amended Complaint, Defendants follow Plaintiff's numbering and hereby respond as follows:

## **RESPONSE TO SECTION ENTITLED "PARTIES"**

1.

Defendants admit that, upon information and belief, Plaintiff is a resident of the State of Georgia. Defendants deny the remaining allegations in Paragraph 1.

2.

Defendants aver that Kandi Burruss-Tucker is a Georgia resident and that she may be served in accordance with the Federal Rules of Civil Procedure. Defendants deny the remaining allegations in Paragraph 2.

3.

Defendants aver that Kandi Koated Entertainment, Inc. is a Georgia Corporation and that Plaintiff has invoked the court's jurisdiction. Defendants further aver that Christina Robinson is the registered agent for Kandi Koated Entertainment and that Kandi Koated Entertainment may be served in accordance with the Federal Rules of Civil Procedure. Defendants deny the remaining allegations in Paragraph 3.

4.

Defendants aver that Ms. Burruss-Tucker is the Chief Executive Officer ("CEO") of Kandi Koated Entertainment. Defendants deny the remaining allegations in Paragraph 4.

5.

Defendants admit that Kandi Koated Entertainment is an employer under the FLSA. Defendants deny the remaining allegations in Paragraph 5 and specifically deny that Ms. Burruss-Tucker is an employer under the FLSA or that Plaintiff was an employee of Defendants.

6.

The allegations in Paragraph 6 state a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 6.

7.

The allegations in Paragraph 7 state a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 7.

8.

Defendants admit that Kandi Koated Entertainment was aware of the existence and requirements of the FLSA. Defendants aver that Ms. Burruss-Tucker is not an employer under the FLSA. Defendants deny the remaining allegations and specifically deny that Plaintiff was covered by the FLSA and that the protections sought apply to Plaintiff.

**RESPONSE TO SECTION ENTITLED "JURISDICTION AND VENUE"**

9.

Defendants admit that Plaintiff has invoked the court's jurisdiction. The remaining allegations in Paragraph 9 state a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 9.

10.

Defendants aver that venue is proper because Kandi Koated Entertainment conducts business in Georgia and Ms. Burruss-Tucker is the CEO of Kandi Koated

Entertainment and is a resident of Georgia. Defendants deny the remaining allegations in Paragraph 10 and specifically deny that any unlawful employment practices occurred or that Plaintiff has stated claims upon which relief may be granted.

11.

Defendants deny the allegations in Paragraph 11 and specifically deny that Plaintiff has stated claims upon which relief may be granted.

12.

Defendants aver that Kandi Koated Entertainment conducts business in Georgia and that Ms. Burruss-Tucker is the CEO of Kandi Koated Entertainment and is a resident of Georgia. Defendants deny the remaining allegations in Paragraph 12.

13.

Defendants admit that Plaintiff has invoked the court’s jurisdiction. Defendants deny the remaining allegations in Paragraph 13.

14.

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Amended Complaint.

## RESPONSE TO SECTION ENTITLED "UNDERLYING FACTS"

15.

Defendants incorporate their responses to Paragraphs 1-14 as if fully set forth herein.

16.

Defendants admit that Plaintiff provided contractor services to Kandi Koated Entertainment during various periods from on or about August 3, 2013 until February 29, 2016 and that DonJuan Antonio Clark provided supervision to Plaintiff. Defendants further admit that Kandi Koated Entertainment provided compensation to Plaintiff for his services. Defendants deny the remaining allegations in Paragraph 16.

17.

Defendants aver that Plaintiff provided contractorervices to Kandi Koated Entertainment during various periods from on or about August 3, 2013 until February 29, 2016. Defendants deny the remaining allegations in Paragraph 17.

18.

Defendants aver that Plaintiff provided contractor services to Kandi Koated Entertainment during various periods from on or about August 3, 2013 until February 29, 2016. Defendants deny the remaining allegations in Paragraph 18.

19.

Defendants aver that Plaintiff provided contractor services to Kandi Koated Entertainment during various periods from on or about August 3, 2013 until February 29, 2016. Defendants deny the remaining allegations in Paragraph 19.

20.

Defendants aver that Kandi Koated Entertainment ended its contract with Plaintiff on or about April 20, 2015. Defendants further aver that Plaintiff began providing services to Kandi Koated Entertainment again on or about May 1, 2015. Defendants deny the remaining allegations in Paragraph 20.

21.

Defendants deny the allegations in Paragraph 21.

22.

Defendants deny the allegations in Paragraph 22.

23.

Defendants deny the allegations in Paragraph 23.

24.

Defendants aver that Ms. Burruss-Tucker is the CEO of Kandi Koated Entertainment. Defendants further aver that Ms. Burruss-Tucker was involved in decision to engage the services of Plaintiff for Kandi Koated Entertainment and the decision to terminate the services of Plaintiff for Kandi Koated Entertainment, that

she requested that Plaintiff perform certain tasks for Kandi Koated Entertainment, and that she was involved in ensuring that Plaintiff was compensated for services provided to Kandi Koated Entertainment. Defendants the deny the remaining allegations in Paragraph 24.

**RESPONSE TO SECTION ENTITLED "COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT ('FLSA') FOR OVERTIME PAY"**

25.

Defendants incorporate their responses to Paragraphs 1-24 as if fully set forth herein.

26.

Defendants deny the allegations in Paragraph 26.

27.

Defendants deny the allegations in Paragraph 27.

28.

Defendants deny the allegations in Paragraph 28

29.

Defendants deny the allegations in Paragraph 29. Defendants further deny that Plaintiff is entitled to any of the relief requested in the Amended Complaint or to any other relief whatsoever against Defendants.

**RESPONSE TO SECTION ENTITLED "COUNT II – VIOLATION OF THE FAIR LABOR STANDARDS ACT ('FLSA') FOR MINIMUM WAGE COMPENSATION"**

30.

Defendants incorporate their responses to Paragraphs 1-29 as if fully set forth herein.

31.

Defendants admit that Kandi Koated Entertainment compensated Plaintiff for contractor services provided to Kandi Koated Entertainment. Defendants deny the remaining allegations in Paragraph 31.

32.

Defendants deny the allegations in Paragraph 32.

33.

Defendants deny the allegations in Paragraph 33.

34.

Defendants deny the allegations in Paragraph 34. Defendants further deny that Plaintiff is entitled to any of the relief requested in the Amended Complaint or to any other relief whatsoever against Defendants.

**RESPONSE TO SECTION ENTITLED "PRAYER FOR RELIEF"**

Defendants deny that Plaintiff is entitled to any of the relief requested in the Amended Complaint or to any other relief whatsoever against Defendants.

## **AFFIRMATIVE DEFENSES**

As and for their separate affirmative defenses to the Amended Complaint, Defendants state as follows:

### **FIRST AFFIRMATIVE DEFENSE**

Plaintiff's Amended Complaint fails in whole or in part to state a claim upon which relief may be granted.

### **SECOND AFFIRMATIVE DEFENSE**

Defendants did not willfully violate the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA") because any acts or omissions giving rise to this action were reasonable, undertaken in good faith, and were not undertaken with reckless disregard as to whether such actions or omissions violated the FLSA.

### **THIRD AFFIRMATIVE DEFENSE**

Pursuant to 29 U.S.C. § 260, Defendants cannot be liable for liquidated damages because any acts or omissions giving rise to this action were undertaken in good faith and with reasonable grounds for believing that their actions were in compliance with the FLSA.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's claims against Defendant Kandi Burruss-Tucker are barred in whole or in part because Ms. Burruss-Tucker is not an employer under the FLSA and Plaintiff did not provide services to Ms. Burruss-Tucker.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred in whole or in part because Plaintiff was not an employee of Defendants within the meaning of the FLSA.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred because to the extent Plaintiff performed services for any Defendant, Plaintiff was an independent contractor at all times.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred in whole or in part because Plaintiff has named the wrong party as a defendant to this action.

**EIGHTH AFFIRMATIVE DEFENSE**

The claims set forth in the Amended Complaint are barred, in whole or in part, by the doctrines of accord and satisfaction.

**NINTH AFFIRMATIVE DEFENSE**

Any amount due to Plaintiff should be offset by payments received by Plaintiff from Kandi Koated Entertainment.

## **TENTH AFFIRMATIVE DEFENSE**

Assuming that Plaintiff is entitled to receive overtime compensation under the FLSA, which is denied, Plaintiff's claims are barred to the extent they include time claimed for non-compensable work under the FLSA, including activities that are preliminary or postliminary to Plaintiff's duties, uncompensated time for meal periods, and for *de minimis* time worked.

## **ELEVENTH AFFIRMATIVE DEFENSE**

Defendants state, in the alternative if necessary, that even if Kandi Koated Entertainment has in fact failed to pay Plaintiff for any of the activities alleged in the Amended Complaint, which Defendants deny, such activities do not constitute compensable work under the FLSA and furthermore, such activities were not an integral and indispensable part of Plaintiff's principal duties and are not compensable.

## **TWELFTH AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiff's alleged damages, if any, were proximately caused by the negligent, reckless or intentional acts or omissions of third parties that Defendants did not have the legal right, duty or opportunity to control, and that acted without Defendants' knowledge, participation, approval or ratification.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiff's alleged damages, if any, are the direct and proximate cause of Plaintiff's own negligence, carelessness, and/or fault. Any right to recovery from Defendants, if any, should be reduced by that amount attributable to Plaintiff's negligence, carelessness and/or fault.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiff was negligent, legally responsible, or otherwise at fault for the damages alleged in the Amended Complaint. Defendants therefore request that, in the event of a finding of any liability against them, an apportionment of fault be made among all parties by the Court or jury to the extent permitted under federal law. Defendants further request a judgment and declaration of partial indemnification and/or contribution against all other parties or persons in accordance with that apportionment of fault.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiff failed to take proper and reasonable steps to avoid or otherwise mitigate any alleged damages, barring recovery against Defendants in this action.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Defendants allege that Kandi Koated Entertainment's policies, practices and procedures are in conformity with all applicable governmental codes and

regulations existing at all relevant times. Therefore, no legal liability may be imposed on Defendants as to any act or practice that is in conformity with such governmental codes and regulations.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

The purported claims of Plaintiff against Defendants are barred under the doctrine of unclean hands.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

The purported claims of Plaintiff against Defendants are barred under the doctrine of waiver and estoppel.

**NINETEENTH AFFIRMATIVE DEFENSE**

The purported claims of Plaintiff are barred because Kandi Koated Entertainment fully compensated Plaintiff for the services performed.

**TWENTIETH AFFIRMATIVE DEFENSE**

The purported claims of Plaintiff are barred by applicable statutes of limitation.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

The purported claims of Plaintiff are barred by Plaintiff's failure to report the conduct alleged in the Amended Complaint.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

The purported claims against Defendants are barred under the doctrine of laches in that Plaintiff delayed filing this action for an unreasonable period of time, which delay has caused detriment and substantial prejudice to Defendants.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

The Amended Complaint, and each purported cause of action therein, are barred, because Defendants' alleged actions were undertaken in good faith, with the absence of malicious intent to injure anyone, and constitute lawful, proper and justified means to further the sole purpose of engaging in and continuing business.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

The Amended Complaint, and each purported cause of action therein, are barred because some or all of the damages claimed by Plaintiff were caused by factors outside Defendants' control, by the actions of third parties, or by Plaintiff's own actions.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred because Plaintiff has suffered no actual or legal injury for which the law provides any redress.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

The purported claims of Plaintiff are barred by contract or agreement.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

As to Plaintiff's claims for equitable relief, those claims and prayer for relief are barred because Plaintiff has an adequate remedy at law.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Amended Complaint does not describe the claims made against Defendants with sufficient particularity to enable them to determine what additional defenses they may have in response to the purported claims. Therefore, Defendants reserve the right to assert all defenses that may be pertinent to these alleged claims once their precise nature is ascertained through discovery.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Defendants are entitled to recover all costs and attorneys' fees incurred herein inasmuch as the claims alleged in Plaintiff's Amended Complaint are frivolous, unreasonable and without foundation.

## GENERAL DENIAL

Defendants expressly deny any and all allegations of Plaintiff's Amended Complaint not specifically admitted in the foregoing.

## DEFENDANTS' COUNTERCLAIMS AGAINST PLAINTIFF JOHNNIE R. WINSTON, III

Pursuant to Federal Rule of Civil Procedure 13 and 28 U.S.C. § 1367, Defendants Kandi Burruss-Tucker ("Ms. Burruss-Tucker") and Kandi Koated Entertainment, Inc. ("Kandi Koated Entertainment") (collectively, "Defendants"),

by and through their undersigned counsel, hereby submit their Counterclaims against Plaintiff Johnnie R. Winston, III ("Mr. Winston" or "Plaintiff").

## INCORPORATION OF ANSWERS AND AFFIRMATIVE DEFENSES

Defendants hereby incorporate and reassert each and every one of the foregoing Affirmative Defenses and Answers previously asserted herein.

## DEFENDANTS' COUNTERCLAIMS

COME NOW Defendants, and for their Counterclaims against Mr. Winston, Plaintiff and Counterclaim Defendant herein, and sates as follows:

### Preliminary Statement

The instant suit is Mr. Winston's attempt to intentionally malign Defendants' reputation and harm their reputation and public persona through false and malicious accusations. It is also an attempt by Mr. Winston, who has his own event planning company, to garner free publicity and national attention by creating a false story line to stay relevant on the nationally and internationally broadcast cable television show, *The Real Housewives of Atlanta* ("RHOA"), of which Ms. Burruss-Tucker is a cast member. As such, it is of no coincidence that Mr. Winston conveniently timed his unsubstantiated attacks against Defendants to coincide with the filming of the latest season of RHOA, securing airtime and free publicity for himself in the show. In fact, the continued relationship between Mr. Winston

(through his own entity, JW Exclusive Designs (aka Exclusive Designs, LLC)[1]) even after February 29, 2016, and with no complaints against Defendants for months until the latest season of RHOA began filming, further belies the substance and timing of Mr. Winston's false claims against Defendants.

Mr. Winston's ploy to gain additional publicity by making knowingly false and malicious accusations regarding Defendants on camera, that were subsequently broadcast nationally and internationally, are the subject of Defendants' counterclaims. Mr. Winston's statements were not only slanderous, defamatory and calculated to injure Defendants' public persona and professional brand, but were also in breach of the Confidentiality and Non-Disclosure Agreement signed by Mr. Winston.

## <u>JURISDICTION AND VENUE</u>

1.

Jurisdiction is proper to hear and determine these counterclaims pursuant to Fed. R. Civ. Proc. 13 and 28 U.S.C. § 1367. Mr. Winston has submitted to personal jurisdiction by filing this suit.

2.

---

[1] Regarding Mr. Winston's entity, JW Exclusive Designs (aka Exclusive Designs, LLC), it is important to note that Mr. Winston owned and fully operated and worked for his entity throughout his business relationship with Kandi Koated Entertainment. Defendants were fully aware and supportive of Mr. Winston's personal business endeavors, and assert that, in light of the time commitments Mr. Winston made to his own business endeavors, Mr. Winston's claims regarding the number of hours he worked for Kandi Koated Entertainment are not only completely false, but physically impossible.

Venue is proper to hear and determine these counterclaims pursuant to 28 U.S.C. § 1367.

**FACTUAL BACKGOUND**

3.

Mr. Winston entered into a professional relationship with Kandi Koated Entertainment on or around December 2, 2012.

4.

On or around December 2, 2012, the parties entered into and willingly executed a Confidentiality and Non-Disclosure Agreement ("NDA"), executed by Johnnie R. Winston, III on behalf of himself, and by DonJuan Clark on behalf of Kandi Koated Entertainment. (*See* Ex. A, Confidentiality and Non-Disclosure Agreement.)

5.

Section II of the NDA executed by Mr. Winston states as follows:

> Non-Disclosure
>
> a. The undersigned shall not, either during the course of their employment, personal or business relationship with Owner or at any time thereafter, divulge to another person, firm or company, any information relating to the Company, the Owner, their employees, associates, affiliates, or family members, or any of the business secrets or dealings of the Company or the Owner which they may have acquired in the course of their employment or relationship therewith.

b. The Undersigned understands and agrees that any and all private information obtained about the Company, the Owner, the Owner's family, friends, and personal associates, during the course of the relationship between the parties hereto, including but not limited to medical, financial, legal, and Family's assets are strictly confidential and may not be disclosed to any third party for any reason other than as described herein.

6.

There were never any agreements executed amongst the parties purporting to establish an employment relationship between Mr. Winston and either Ms. Burruss-Tucker or Kandi Koated Entertainment.

7.

From the inception of the professional relationship between Mr. Winston and Kandi Koated Entertainment, and throughout the entirety of Mr. Winston's business relationship with Kandi Koated Entertainment, Mr. Winston was classified, treated, and compensated as an independent contractor.

8.

At no time during Mr. Winston's business relationship with Kandi Koated Entertainment did any of the parties intend, believe, or take any actions supporting, the classification of Mr. Winston's business relationship with Kandi Koated Entertainment as anything other than that of an independent contractor.

9.

During the course of Mr. Winston’s business relationship with Kandi Koated Entertainment, Mr. Winston conducted business as himself, and also through various entities owned and operated by Mr. Winston, including JW Exclusive Designs, aka Exclusive Designs, LLC.

10.

During the course of Mr. Winston’s business relationship with Kandi Koated Entertainment, Mr. Winston conducted business with Kandi Koated Entertainment on behalf of himself, as well as on behalf of the various entities owned and operated by Mr. Winston, including JW Exclusive Designs, aka Exclusive Designs, LLC.

11.

According to the Georgia Secretary of State Website, Exclusive Designs, LLC was administratively dissolved on February 16, 2016. (*See* Ex. B, Secretary of State Certificate of Administrative Dissolution/Revocation.)

12.

No records for an entity named JW Exclusive Designs exist on the Georgia Secretary of State Website.

13.

Upon information and belief, as of the date of the filing of these counterclaims, Mr. Winston continues to own, operate, and conduct business in Georgia through the entity JW Exclusive Designs, aka Exclusive Designs, LLC.

14.

Mr. Winston's prior business relationship with Kandi Koated Entertainment ended on or around February 29, 2016.

15.

On February 29, 2016, Mr. Winston signed an agreement that terminated his independent contractor services to Kandi Koated Entertainment. (*See* Ex. C, Termination of Service.)

16.

That agreement provided: "We remain committed to the terms, covenants, and promises as set forth in the Confidentiality and Non Disclosure Agreement signed by you and we anticipate that you will reciprocate the same."[2]

17.

Although Mr. Winston's prior business relationship with Kandi Koated Entertainment ended in February 2016, Defendants continued to contract solely with Mr. Winston's entity, JW Exclusive Designs, aka Exclusive Designs LLC, to

---

[2] Mr. Winston also signed a similar agreement with this language in April 2015. (*See* Ex. D, April 20, 2015 Correspondence.)

assist with various events sponsored by prior business relationship with Kandi Koated Entertainment ended on or around February 29, 2016.

18.

Between February 2016 and August 2016, Defendants contracted with Mr. Winston's entity on at least two occasions to assist with events.

19.

Ms. Burruss-Tucker is a public figure known for over 20-year long career as a musician, producer, actress, and business woman.

20.

Ms. Burruss-Tucker is a regular cast member of RHOA, which airs primarily on the Bravo Channel or TV, Bravo Media LLC, a division of NBCUniversal ("Bravo"), and is broadcast nationally and internationally as well as online.

21.

Throughout his business relationship with Kandi Koated Entertainment, and as a function of his business relationship with Kandi Koated Entertainment, Mr. Winston made appearances on RHOA.

22.

Mr. Winston gained publicity for the services that he offered through the entities that he owned and operated due to his appearances on RHOA.

23.

Subsequent to the end of Mr. Winston's business relationship with Kandi Koated Entertainment, Mr. Winston would no longer have the access or ability to appear on RHOA that he previously enjoyed due to his prior business relationship with Kandi Koated Entertainment.

24.

On an episode of RHOA that aired on January 8, 2017, Mr. Winston appeared on air in relation to an event sponsored by Kandi Koated Entertainment that occurred in August 2016.

25.

Kandi Koated Entertainment engaged the services of JW Exclusive Designs to assist with the event that Kandi Koated Entertainment sponsored in August 2016.

26.

The content that aired on January 8, 2017, was filmed in August 2016.

27.

Between February 2016 and August 2016, no request for additional pay for contractor services provided to Kandi Koated Entertainment was made on behalf of Mr. Winston, JW Exclusive Designs, or Exclusive Designs, LLC.

28.

Between February 2016 and August 12, 2016, no complaint regarding compensation for contractor services provided to Kandi Koated Entertainment was requested on behalf of Mr. Winston, JW Exclusive Designs, or Exclusive Designs, LLC.

29.

The first time that Defendants learned that Mr. Winston was unsatisfied with the amount of pay he received during his business relationship with Kandi Koated Entertainment was in August 2016, during filming of RHOA, which occurred at least six months after the end of his prior business relationship with Kandi Koated Entertainment.

30.

Ms. Burruss-Tucker did not request that Mr. Winston appear on RHOA.

31.

The services that Mr. Winston provided through JW Exclusive Designs for the event sponsored by Kandi Koated Entertainment in August 2016 were rendered completely and were wholly different from Mr. Winston's appearance on RHOA in August 2016.

32.

During the episode of RHOA that was filmed in August 2016, Ms. Burruss-Tucker makes the following statement, or substantially similar statement, regarding an Instagram post (attached as Ex. E) in which Mr. Winston appears to be upset: "I hired Johnnie [Mr. Winston] to work at the Kandi Factory 3 years ago. Johnnie had his own event planning company at the time on the side so I tried to help him out, tried to get him more clients, when it was time for the wedding I let him be the coordinator so that he could get more credit for his company… I had to let Johnnie go earlier this year because he kept dropping the ball. But, it was no hard feelings, so I continued to hire Johnnie's company for events that I had going on during the year."

33.

During the same episode of RHOA that was filmed in August 2016, Ms. Burruss-Tucker spoke with Mr. Winston regarding the Instagram post and why Mr. Winston appeared to be upset.

34.

In response to Ms. Burruss-Tucker's inquiry as to why he was upset, Mr. Winston responded that he felt as if he could have had a "closer conversation" with Ms. Burruss-Tucker prior to the end of his business relationship with Kandi Koated Entertainment.

35.

Mr. Winston asked Ms. Burruss-Tucker if she felt that Mr. Winston was getting the pay each week that he deserved based on what he was doing.

36.

Ms. Burruss-Tucker responded that Mr. Winston accepted the pay and that if he did not feel that he was getting the pay he deserved, he could have gone to Ms. Burruss-Tucker's business manager, DonJuan Clark ("Mr. Clark") with his concerns. Ms. Burruss-Tucker further responded that Mr. Winston was continuing to get business because of the work that he was doing with Defendants.

37.

Later in the episode of RHOA that aired on January 8, 2017, Mr. Winston met with Phaedra Parks ("Ms. Parks"), a cast member of RHOA.

38.

Although Ms. Parks is an attorney, Ms. Parks does not now, and has never, represented Mr. Winston as an attorney.

39.

During his discussion with Ms. Parks, Mr. Winston revealed alleged checks that he had received on behalf of JW Exclusive Designs, aka Exclusive Designs, LLC, for contractor services performed for Kandi Koated Entertainment.

40.

During his discussion with Ms. Parks, Ms. Parks asked Mr. Winston whether he ever received an annual review or insurance benefits, to which Mr. Winston answered that he had not.

41.

During the same discussion with Ms. Parks, Ms. Parks asked Mr. Winston why he felt compelled to become “vested” with Defendants.

42.

Mr. Winston responded to Parks’s inquiry: “I just really thought that we were going to be business partners ultimately. Kandi and I had met to open a restaurant. We had actually looked at a property downtown. She and I met with a realtor and went there first.”

43.

In response to Mr. Winston’s statement, Ms. Parks asked Mr. Winston: “So you and her had been actively pursuing the establishment?... So ya’ll [*sic*] were going to be restauranteurs together?”

44.

Mr. Winston answered Ms. Parks’s question in response: “Exactly. But then, months ago it’s like- Oh well Todd [Ms. Burruss-Tucker’s husband] and I are

going to open up a restaurant and I was like- since when did you decide to open up a restaurant? It was like a slap in the face."

45.

In a RHOA episode that aired on March 26, 2017, Mr. Winston again appeared on air with Ms. Parks as well as one of his current attorneys in the present suit, Oscar Prioleau, Jr. ("Mr. Prioleau").

46.

Mr. Priloeau stated that his understanding was that Mr. Winston had two issues. The first issue was that Mr. Winston feels as though he had not been compensated for the hours that he worked. The second issue had to do with "some agreements that you made with your former employer and that agreement has not been adhered to."

47.

Mr. Winston responded that Mr. Priloeau was correct. Mr. Winston further states: "In March of 2015, they were asking me what were some alternate things that I wanted to do. And I talked about the restaurant. Kandi thought it was a good idea because she said she's always looking for something to invest in."

48.

Mr. Priloeau then asked Mr. Winston if he asked Ms. Burruss-Tucker to invest in the restaurant, to which Mr. Winston replied: "I asked her if she would be

a silent partner. I did ask her that. She said that she would and I didn't hear anything else about it. 8 months later- 'Oh well me and Todd are going to open up a restaurant.' The concept was the same exact concept that I told them."

49.

Later during the on-air discussion between Ms. Parks and Mr. Priloeau, Mr. Winston stated: "This isn't the first time that an idea has been ripped off. Just like the play A Mother's Love. I came up with the whole concept of the play and they ran with it."

50.

When Mr. Winston made on-air comments regarding the play produced, in part, by Kandi Koated Entertainment entitled "A Mother's Love," Mr. Winston was aware that the content of the play is based loosely on Ms. Burruss-Tucker's own relationship with her husband and mother, a topic that had been a prominent storyline on RHOA in previous seasons.

51.

Mr. Winston's on-air comments regarding Ms. Burruss-Tucker's restaurant business and the play entitled "A Mother's Love" were made with actual malice as Mr. Winston was aware his statements were false and/or had a reckless disregard for their falsity.

52.

Mr. Winston's on-air comments regarding Ms. Burruss-Tucker's restaurant business and the play entitled "A Mother's Love" were calculated to injure Defendants.

53.

As a direct and proximate result of Mr. Winston's false and malicious statements and publications, Defendants have suffered, and are suffering damages, including, but not limited to, humiliation, ridicule, hatred, contempt, injury or impairment to their reputation and/or standing in the community and/or embarrassment, which damages will continue to be suffered now and in the future. The injuries are either permanent or continuing in nature.

54.

Mr. Winston's on-air comments relating to Defendants was a disclosure in breach of the NDA that Mr. Winston executed on or around December 2, 2012 and of the Termination of Service agreement that Mr. Winston executed on February 29, 2016.

55.

On or around March 10, 2010, Ms. Burruss-Tucker signed an agreement with True Entertainment, LLC, the production company for RHOA. The agreement

between Ms. Burruss-Tucker and True Entertainment, LLC has no bearing on the instant matter as Mr. Winston was not a cast member, or participant, of RHOA.

56.

Upon information and belief, Mr. Winston signed an appearance release with True Entertainment, LLC, before appearing on RHOA in January and March 2017.

57.

Upon information and belief, the appearance release provides that Mr. Winston will not receive any compensation for appearing on RHOA.

58.

Upon information and belief, the appearance release provides that Mr. Winston will not bring any claims against True Entertainment, LLC, or its on-air talent, that arise out of or result from his appearance on RHOA.

**<u>COUNT I</u>**
**(BREACH OF CONTRACT)**

59.

Defendants adopt by reference and re-allege the allegations of Paragraphs 1 through 58 above, as if fully set forth herein.

60.

Defendants and Mr. Winston entered into a valid enforceable contract and NDA whereby Mr. Winston agreed “either during the course of [his] employment,

personal or business relationship with [Defendants] or at any other time thereafter," not to "divulge to another person, firm or company, any information relating to the Company, the Owner, their employees, associates, affiliates, or family members, or any of the business secrets or dealings of the Company or the Owner which [he] may have acquired in the course of… [his] relationship therewith."

61.

Further, Mr. Winston and Defendants entered into a valid enforceable contract whereby Mr. Winston agreed "that any and all private information obtained about the Company, the Owner, the Owner's family, friends, and personal associates, during the course of the relationship between the parties hereto, including but not limited to medical, financial, legal, and Family's assets are strictly confidential and may not be disclosed to any third party for any reason other than as described herein."

62.

Notwithstanding the false nature of his statements, Mr. Winston has breached, and continues to breach the NDA that he executed with Defendants by divulging and publishing to third parties, nationally and internationally, and through a forum that remains available for republication, statements referenced in Paragraphs 39 and 40 herein. Such statements are "information relating to the

Company, the Owner, their employees, associates, affiliates, or family members," as well as "the business secrets or dealings of the Company or the Owner which [he] may have acquired in the course [his] employment or relationship therewith."

63.

Notwithstanding the false nature of his statements, Mr. Winston has breached, and continues to breach the NDA that he executed with Defendants by divulging and publishing to third parties, nationally and internationally, and through a forum that remains available for republication, statements referenced in Paragraphs 39 and 40 herein. Such statements are "private information obtained about the Company, the Owner, the Owner's family, friends, and personal associates, during the course of the relationship between the parties hereto, including but not limited to medical, financial, legal, and Family's assets."

64.

As a result of Mr. Winston's breaches of the NDA, Defendants have suffered damages in an amount to be determined at trial.

## COUNT II
## (DEFAMATION AND SLANDER)

65.

Defendants adopt by reference and re-allege the allegations of Paragraphs 1 through 64 above, as if fully set forth herein.

66.

Mr. Winston falsely and maliciously defamed Defendants of violating an oral agreement to become restaurant partners.

67.

Mr. Winston falsely and maliciously defamed Defendants of stealing a restaurant idea from him.

68.

Mr. Winston falsely and maliciously defamed Defendants of “ripping off” an idea of a play, which ultimately became a play produced, in part, by Kandi Koated Entertainment entitled “A Mother’s Love.”

69.

Mr. Winston’s false and malicious statements were published by Mr. Winston to third parties, nationally and internationally, and remain available for republication.

70.

Mr. Winston’s intent of publishing his defamatory statements were calculated to injure Defendants’ professional reputation and businesses.

71.

Mr. Winston’s’ false and defamatory statements were not privileged.

72.

Mr. Winston made the false statements with actual malice as Mr. Winston made the statements knowing their falsity or with reckless disregard for their falsehood.

73.

The false statements published by Mr. Winston were designed by Mr. Winston to cause harm to Defendants, and have caused harm to Defendants, and made solely in an effort to promote Mr. Winston's own "celebrity" and compensation abilities.

74.

Defendants' reputations has been damaged as a direct and proximate result of Mr. Winston's tortious defamation.

75.

Mr. Winston's defamation was intentional, willful and malicious, thus entitling Defendants to an award of punitive or exemplary damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Defendants demand a **TRIAL BY JURY** and respectfully request that this Court grant the following relief:

(1) Dismiss Mr. Winston's action against Defendants with prejudice; a

(2) Award Defendants damages, in an amount to be determined at trial, for Mr. Winston's breach of his Non-Disclosure Agreement and Termination of Service Agreement;

(3) Award Defendants damages, in an amount to be determined at trial, for Mr. Winston's tortious conduct of committing defamation and slander against Defendants, including an award of punitive or exemplary damages under O.C.GA. §51-12-5.1; and

(4) All such other relief as the Court may deem just and proper.

Respectfully submitted this 6th day of April, 2017.

*/s/ Allegra J. Lawrence*
Precious Anderson (GA Bar 017783)
THE ANDERSON FIRM, LLC
1100 Spring Street, Suite 730
Atlanta, Georgia 30309
Telephone: 404.521.1111
Facsimile: 404.521.1919
panderson@theandersonfirm.com
Allegra J. Lawrence (GA Bar 439797)
Victoria C. Smith (GA Bar 836602)
LAWRENCE & BUNDY LLC
1180 West Peachtree Street N.W., Suite 1650
Atlanta, Georgia 30309
Telephone: 404.400.3350
Facsimile: 404.609.2504
allegra.lawrence-hardy@lawrencebundy.com
victoria.smith@lawrencebundy.com

*Attorneys for Defendants Kandi Burruss-Tucker and Kandi Koated Entertainment, Inc.*

**EXHIBIT A**

# KANDI KOATED ENTERTAINMENT, INC.

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

THIS CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT (this "Agreement"), is made and entered into this 2nd day of December 2012, by and between Johnnie R. Winston, III, an individual resident of the State of Georgia (the "Undersigned") whose address is 3402 Little Beth Court Decatur, GA 30034; and KANDI KOATED ENTERTAINMENT, INC. a Georgia corporation (the "Company") whose Principal address is 658 Whitehall Street, Atlanta, GA 30310 ; and Kandi L. Burruss (the "Owner"), an individual resident of the State of Georgia whose address is c/o the aforementioned Company address.

WITNESSETH:

WHEREAS the Company and/or Owner and the Undersigned have entered into a business relationship and/or a contractual agreement relating to or involving the Company, the Owner, the Owner's ideas, financial assets, personal relationships, business relationships, personal information, and business information and;

WHEREAS to protect adequately the interests of the Owner, it is essential that the Undersigned enter into this Agreement;

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereto, intending to be legally bound, hereby agree as follows:

I. Confidential Information

a. Confidential Information shall mean any data or information, which is valuable to the Company and the Owner and not known to the general public or competitors of the Company and the Owner.

b. The Undersigned shall hold in confidence all Confidential Information and shall not disclose, publish or make use of Confidential Information without the prior written consent of the Owner provided, however, that the provisions of this section shall not prohibit any disclosure (a) required by any applicable legal requirement so long as reasonable prior notice is given of such disclosure and a reasonable opportunity is afforded to contest the same or (b) made in connection with the enforcement of any right or remedy relating to this Agreement or the transactions contemplated herein.

II. Non-Disclosure

a. The undersigned shall not, either during the course of their employment, personal or business relationship with Owner or at any other time thereafter, divulge to another person, firm or company, any information relating to the Company, the Owner, their employees, associates, affiliates, or family members, or any of the business secrets



JRW III

or dealings of the Company or the Owner which they may have acquired in the course of their employment or relationship therewith.

b. The Undersigned understands and agrees that any and all private information obtained about the Company, the Owner, the Owner's family, friends, and personal associates, during the course of the relationship between the parties hereto, including but not limited to medical, financial, legal, and Family's assets are strictly confidential and may not be disclosed to any third party for any reason other than as described herein.

III. Return of Documents on Termination

a. The Undersigned agrees that all files, letters, memorandums, reports, records, data and other tangible material containing Confidential Information which may have been prepared by the Undersigned or which may have come into the Undersigned's possession are the property of the Company and/or Owner to be used by the Undersigned only in the proper performance of his or her duties with the Company and/or the Owner.

b. Whenever requested or upon termination of employment or the business relationship, the Undersigned will promptly deliver to the Company and/or the Owner all property of the Company and/or Owner, including but without limitation, any property mentioned above, Company car, mobile phone, personal or lap-top computer, fax machines, all keys, credit cards, all lists of clients, customers, associates, family members, details of pending contracts and quotations, business correspondence and records which may have been prepared by the Undersigned or which may have come into the Undersigned's possession in the course of the relationship between Company and/or Owner and the Undersigned, whether or not in the proper performance of the Undersigned's duties with the Company. The Undersigned will not retain copies or notes and extracts of such documents or such materials.

IV. Public Relations

Unless otherwise specified as a specific part of the Undersigned's responsibility and obligation to the Company and/or the Owner, the Undersigned will not give press or other media interviews, on or off the record, without the express written consent of the Company or the Owner.

V. Severability

If any provision of this Agreement is determined to be invalid, illegal, or unenforceable, the validity or enforceability of the other provisions shall not be affected.

VI. Injunctive Relief

The Undersigned hereby agrees that any remedy at law for any breach of the provisions contained herein shall be inadequate and that the Company and Owner shall be entitled to injunctive relief in addition to any other remedy the Company and Owner might have under this Agreement.

VII. Governing Law

This Agreement and any claims related to the subject matter hereof shall be construed in

accordance with the laws of the State of Georgia, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

VIII. Entire Agreement

This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.

IX. Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

By: ________________________

DonJuan Clark c/o
Kandi Koated Entertainment, Inc.

By: ________________________

(Print Name)

________________________

(Signature)

**EXHIBIT B**

Control Number : 12017163

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF ADMINISTRATIVE DISSOLUTION/REVOCATION

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

**EXCLUSIVE DESIGNS, LLC**
a **Domestic Limited Liability Company**

was mailed a notice in accordance with Title 14 of the Official Code of Georgia Annotated and was involuntarily or administratively dissolved or its certificate of authority revoked by the Office of Secretary of State on 02/16/2016 for failure to file its annual registration.

This certificate is issued pursuant to Title 14 of the Official Code of Georgia Annotated and is prima-facie evidence of the existence or nonexistence of the facts stated herein.

WITNESS my hand and official seal in the City of Atlanta
and the State of Georgia on 02/16/2016

Brian P. Kemp
Secretary of State

**EXHIBIT C**

Kandi Koated
658 Whitehall Street SW
Atlanta, GA 30310

**February 29, 2015**

**Termination of Service**

Dear Mr. Winston

On behalf of Ms. Burruss and Kandi Koated Entertainment, Inc. (KKE), it is with our sincerest and best wishes that we have elected to relieve you of all your full time duties as an Independent Contractor or on a voluntary basis, including without limitation those listed herein, effective immediately.

It is imperative that we have your full cooperation in the reduction of your status to as needed and you cease and desist your involvement and affiliation with any and all KKE related business in which we do not specifically contact you to be apart of. Therefore, as of the date set forth herein and upon your receipt of this notice, the following shall be executed by you and by KKE:

1. The email account Johnnie@kandikoated.com will have your access-limited effective as of Monday February 29, 2016.
2. You hereby acknowledge that you have no authority to participate in any negotiations on behalf of KKE, it subsidiaries or affiliates. Nothing contained herein shall be deemed authorization to represent KKE in any capacity hereafter.
3. You hereby acknowledge that you no longer have the authority under any circumstances, to facilitate any communications or procure any deals on behalf of KKE.
4. You hereby acknowledge that you are not currently nor shall you hereafter under any circumstances act as an agent on behalf of KKE.
5. You hereby acknowledge and agree to indemnify and hold KKE harmless from any liability or fees (including attorney's fees) arising from any claims made by you to any third party, pertaining to KKE.
6. You hereby acknowledge that as an independent contractor you have waived all rights to the following items but not limited to the items of: any unemployment fees and compensation, legal fees, healthcare benefits, etc.
7. All documents that Kandi Koated Entertainment, T Tucker Productions or its subsidiaries must be put on the hard drive given to you, and deleted from you computer.
8. Your mailbox and office key must be turned in immediately.

On behalf of Mrs. Burruss – Tucker and KKE we thank you for your work, commitment, and dedication as a Production Coordinator, Studio Manager, and Event Planner and we commend you on your work. We certainly would like to contact you on an as needed basis as we do value your work. We remain committed to the terms, covenants, and promises as set forth in the Confidentiality and Non Disclosure Agreement signed by you and we anticipate that you will reciprocate the same.

Releasing parties agreement to terms:

Johnnie Winston

# EXHIBIT D

Kandi Koated

658 Whitehall Street SW
Atlanta, GA 30310

April 20, 2015

Dear Mr. Winston

On behalf of Ms. Burruss and Kandi Koated Entertainment, Inc. (KKE), it is with our sincerest and best wishes that we have elected to relieve you of all your **full time** duties as an Independent Contractor or on a voluntary basis, including without limitation those listed herein, effective immediately.

It is imperative that we have your full cooperation in the reduction of your status to as needed and you cease and desist your involvement and affiliation with any and all KKE related business in which we do not specifically contact you to be apart of. Therefore, as of the date set forth herein and upon your receipt of this notice, the following shall be executed by you and by KKE:

1. The email account Johnnie@kandikoated.com will have your access-limited effective as of Monday, April 20, 2015.
2. You hereby acknowledge that you have no authority to participate in any negotiations on behalf of KKE, it subsidiaries or affiliates. Nothing contained herein shall be deemed authorization to represent KKE in any capacity hereafter.
3. You hereby acknowledge that you no longer have the authority under any circumstances, to facilitate any communications or procure any deals on behalf of KKE.
4. You hereby acknowledge that you are not currently nor shall you hereafter under any circumstances act as an agent on behalf of KKE.
5. You hereby acknowledge and agree to indemnify and hold KKE harmless from any liability or fees (including attorney's fees) arising from any claims made by you to any third party, pertaining to KKE.
6. You hereby acknowledge that as an independent contractor you have waived all rights to the following items but not limited to the items: any unemployment fees and compensation, legal fees, healthcare benefits, etc.

On behalf of Mrs. Burruss – Tucker and KKE we thank you for your work, commitment, and dedication as a Production Coordinator, Studio Manager, and Event Planner and we commend you on your work. We certainly would like to contact you on an as needed basis as we do value your work. We remain committed to the terms, covenants, and promises as set forth in the Confidentiality and Non Disclosure Agreement signed by you and we anticipate that you will reciprocate the same.

If you have any questions or concerns, please do not hesitate to contact us.

Thank you and best wishes.

Donjuan Clark

Johnnie Winston

**EXHIBIT E**




106 likes

**jwinston06** This was before I had to separate the real from the fake. Some people will only use you when they can benefit from you, once the benefit stops so does the Loyalty. 🙊

7:26

55:30

Bravo

The Real Housewives of Atlanta S9 Ep9 Char-lotta Drama

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2017, I electronically filed the foregoing **DEFENDANTS KANDI BURRUSS-TUCKER AND KANDI KOATED ENTERTAINMENT, INC.'S MOTION FOR LEAVE TO AMEND ANSWER TO PLAINTIFFS' AMENDED COMPLAINT TO ADD COUNTERCLAIM** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorneys of record:


Oscar E. Prioleau, Jr.
PRIOLEAU & MILFORT, LLC
271 17th Street, N.W., Suite 520
Atlanta, Georgia 30363
oscar@pmlawteam.com

Lisa York Bowman
YORK BOWMAN LAW, LLC
400 Perimeter Center Terrace, Suite 900
Atlanta, Georgia 30346
lisa@yorkbowmanlaw.com


I further certify that the foregoing document was prepared using 14 point Times New Roman font.

*/s/ Allegra J. Lawrence*
Allegra J. Lawrence